[Cite as *Savidge v. Klaus*, 2017-Ohio-4357.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY


KEITH SAVIDGE,

    PLAINTIFF-APPELLEE,               CASE NO.  2-17-02

    v.

RONALD KLAUS,                       O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Auglaize Municipal Court
Trial Court No. 2016 CVF 00284

Judgment Affirmed

Date of Decision:   June 19, 2017


APPEARANCES:

    *James A. Tesno* for Appellant

    *Stephen J. Mansfield* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Ronald E. Klaus ("Klaus"), brings this appeal from the December 21, 2016, judgment of the Auglaize County Municipal Court granting a money judgement against Klaus in favor of plaintiff-appellee, Keith Savidge ("Savidge"), in the amount of $4,799.  On appeal, Klaus argues that multiple findings of the trial court were not supported by the evidence and that the trial court's judgment was against the manifest weight of the evidence.

*Relevant Facts and Procedural History*

{¶2} Klaus is a farmer and Savidge is the owner-operator of an agricultural service and repair business.  In August of 2015, Klaus brought his 1969 Ford tractor to Savidge to have the clutch repaired and to have a new "pressure plate" put on.[1] Klaus also asked Savidge to check various parts for water leaks including, *inter alia*, the "head gasket," and "frost plug."  Klaus brought his tractor to Savidge's shop on a trailer.  Savidge made the requested repairs to the tractor and he replaced a hose that Savidge determined was leaking after conducting a pressure test.[2]  In the process of replacing the hose, all the coolant had to be drained from the tractor.  One of the primary disputes in this case is whether the coolant was returned to the tractor after

---

[1] Savidge's complaint states that it was a 1970 Ford Tractor but Klaus indicated it was actually a 1969.
[2] Savidge specifically testified that water "shot right out of" the bad hose when he was conducting a pressure test.  (Trial Tr. at 3).  Savidge testified that he figured the hose was where Klaus was losing water.  (*Id*. at 28).  The new hose was provided by Klaus.

the hose was replaced, which Savidge and his son adamantly maintained happened here.

**{¶3}** When the work on the tractor was completed, Savidge notified Klaus and Klaus came to the shop to get his tractor.[3] At the time, Klaus could not arrange to haul the tractor so he attempted to drive the tractor back to his residence, which was over 10 miles away.[4] After Klaus had driven approximately 4 miles, he indicated that the tractor was overheating. Klaus stated that he thought he could smell it. Klaus stated that he pulled the tractor off of the road to let it cool down for a bit, then he drove another 2 miles down the road to Jim Johnson's house, who was a friend and a mechanic.

**{¶4}** Jim Johnson indicated that he could see Klaus's tractor coming toward his property, that it looked like the tractor was on fire, with an "ungodly amount of smoke" coming from the "blow by tube."[5] (Trial Tr. at 115-116). Johnson stated that he could smell antifreeze in the air in the smoke. At Johnson's residence the tractor was shut down completely and water was put into the coolant system. So much water had to be added that Johnson and Klaus felt the coolant system had to be empty. Klaus eventually started the tractor again and when it was shut down it

---

[3] The original bill was $1,872.00 and it was promptly paid by Klaus according to both parties.

[4] Savidge testified that he thought Klaus lived 15-18 miles away. A definitive answer as to how far away Klaus lived was never provided by Klaus, but it can be inferred from the testimony that it was at least 10 miles.

[5] Johnson testified that the "blow by tube" was the "breather for the – the crankcase." (Trial Tr. at 116).

Case No. 2-17-02

had water in the oil and a similar "blow by," or plume of smoke coming out of the tractor. Further, Johnson indicated that water was coming into the "crankcase" through the engine. Klaus indicated that after letting the tractor sit for a night at Johnson's residence, all the water eventually ran into the crankcase.

{¶5} Savidge was called and asked to come out to Johnson's property by Klaus.[6] Klaus felt that the incident was caused by Savidge failing to put coolant back into the system after replacing the hose and draining the coolant during the initial repair job. Savidge was adamant that he had a protocol that was always used for returning coolant to the system, and that the protocol was used on Klaus's tractor in this case. Savidge specifically recalled watching his son, who worked part-time for Savidge, put the coolant back into Klaus's tractor, and Savidge's son testified that he did put the coolant back in Klaus's tractor. Savidge maintained that separate problems with the engine caused the overheating, not any failure by him to return any coolant to the system.

{¶6} Regardless, the tractor was taken back to Savidge's business, where it was determined that the tractor did have engine issues. Klaus took the "block" at Savidge's suggestion to see if there were any cracks in it, and it was determined that the block was cracked and it was ultimately repaired elsewhere. It was "bored" and "sleeves' were put in it. (Trial Tr. at 20).

---

[6] Savidge testified that Johnson's residence was "ten mile[s] exactly" from his shop. (Trial Tr. at 10). Savidge testified that if there was no water in the system Klaus would not have made it two miles.

-4-

{¶7} Savidge then finished the work, which he described as "overhaul[ing] the engine," on the tractor and notified Klaus that it was ready to be picked up. (*Id.* at 22). Savidge gave Klaus a bill for $4,799 and Klaus paid it by check and took his tractor, loading it onto a trailer to haul it away.[7] Klaus stopped payment on the check shortly thereafter.

{¶8} On April 12, 2016, Savidge filed a "Complaint for Money Judgment" against Klaus for the $4,779.00 repair bill. Attached to the complaint were copies of the invoice and the check on which the stop payment had been issued.

{¶9} On May 9, 2016, Klaus filed an Answer and Counterclaim. In the answer, Klaus admitted that Savidge had performed work on the tractor as alleged in the complaint and admitted that he had originally paid by check and stopped payment on the check; however, he asserted a counterclaim alleging that Savidge agreed to "repair and overhaul the clutch" in the tractor in August of 2015, that Savidge's work "caused the coolant to be removed from [Klaus's] tractor and [Savidge] failed to replace it," that Savidge returned the tractor after he had completed the clutch repairs without replacing the coolant in the tractor, and that due to this negligence, the tractor overheated, causing damage to the engine. Klaus

---

[7] The bill had a subheading, "Work to be done," which contained the following language: "(1) Water in oil [line break] Remove Cylinder Head Replace Head gasket didn't help Pull Engine Pulled [sic] Apart they took to machine shop it had pin holes in [illegible]. They Sleeved I put new Pistons, Rings, Rod + [illegible], new oil pump, got running, put oil gauge in to check PSI had 75 PSI at [illegible]." (Pl.'s Ex. 2). There is another line break followed by a "note" that states "injection pump needs reworked + [illegible] gauges and tack don't work[.]" (*Id.*)

further alleged that in August 2015, Savidge agreed to repair the damage to the tractor occasioned by the overheating. Klaus claimed that he incurred expenses in the repairs/rebuilding of his tractor in the sum of $2,998.72 with compensable time and mileage of $1,458.54. Klaus alleged that this was all incurred as a proximate result of Savidge's negligence in failing to place coolant in Klaus's tractor after the initial repairs. Klaus thus demanded payment in the amount of $4,457.26.

{¶10} On May 31, 2016, Savidge filed his answer to the counterclaim. Savidge denied that he failed to replace coolant during the original repair.

{¶11} In September of 2016 a bench trial was held.[8] At trial, Savidge testified in his case-in-chief that he performed repairs on Klaus's vehicle on two separate occasions, both of which were the incidents previously discussed. Savidge's son also testified, specifically regarding the initial repair, stating that he did replace the coolant in Klaus's tractor after replacing the hoses. Savidge testified that he witnessed his son replace the coolant according to their established protocol. In addition, Savidge testified that several, if not all of Klaus's gauges were not working on his tractor during the initial repair job.

{¶12} Savidge also called Mark Siegel to testify, who owned "Exit 99" engine rebuilders. Klaus's "block" had been brought to Siegel's establishment after

---

[8] It is not marked in the record what day in September the trial was actually held. This is perhaps because the beginning of the trial, and some of the first witness's testimony was not transcribed due to a technical problem with the recording system.

Klaus broke down following the initial repair done by Savidge in August of 2015. Siegel testified as to repairing a pinhole in the pressure block in Klaus's engine in this case. Siegel also testified that the pinhole would cause coolant to escape over a period of time, through exhaust or oil. Siegel testified that if a cylinder had a "leaking bore at the bottom" he would expect fluid to be found in the "crank case." (Trial Tr. at 42). Siegel testified that when he repaired the engine there was a leaking bore towards the bottom. (*Id.*)

{¶13} In his case-in-chief, Klaus testified that he had no problems with the coolant system prior to the initial repair done by Savidge. Klaus also testified that after his tractor overheated on the way home from Savidge's business, it was his understanding that he would pay for parts to repair the tractor and Savidge would cover the labor. Klaus testified that he believed the only reason the tractor overheated was due to Savidge's failure to put coolant back into the system after the initial repairs. Klaus sought compensation for his time and mileage as a result of what he considered to be Savidge's failure at $100 per hour.

{¶14} Klaus called four other witnesses to testify, including Joseph Selhorst who sold farm equipment and had worked on tractor engines in the past. Selhorst had never worked on Klaus's engine at any time, but he was asked a number of hypothetical questions essentially giving him the facts of this case. Selhorst was then asked where the coolant could have gone if it was put back into the system by

Savidge and he gave several opinions, though he ultimately opined that given the circumstances he would guess that there was no coolant put back into the system by Savidge.

{¶15} Klaus's son testified at trial that he was the main driver of the tractor in question and that he had no problem with the cooling system prior to taking it to Savidge's business.

{¶16} Jim Johnson was the final witness to testify, giving his account of seeing Klaus drive up towards his property in a plume of white smoke, where he could smell the antifreeze in the air. Johnson testified that after water was put into the system on his property, the same "blow by" came out of the tractor that he had seen when the tractor approached his property.

{¶17} At the conclusion of the testimony, the matter was submitted to the trial court for decision. On December 21, 2016, the trial court filed its judgment entry on the matter. The trial court ultimately ruled in favor of Savidge, reasoning, in part, as follows.

> **The court finds that neither party has presented any definitive evidence as to how the problem occurred. The plaintiff and his son had followed shop procedure in placing the coolant back into the tractor. They then believed that the engine problem caused the coolant to leak into the oil causing the tractor to overheat. They based this opinion on the smoke observed as the tractor was being driven to the James Johnson residence in that the smoke would have been water vapor boiling out of the hot oil and escaping through the blow by tube.**

> **The defendant took the position that the coolant was not put into the tractor because when he checked the oil with James Johnson before they added water and ran the tractor[,] [b]oth the defendant and James Johnson testified that the oil was slightly over full and its color was black. After the water was added to the coolant system the oil was now higher than before and was a lightish grey. Mr. Johnson testified that the same type of plumb [sic] was present when the tractor was run at his residence as he observed as the tractor was being driven down the road to his residence.**
>
> **Therefore the Court finds that the plaintiff did complete the repair to put the tractor back into working order. There was no agreement that he would do so without payment and the court cannot find that the defendant has established by a preponderance of the evidence that the plaintiff failed to put coolant back into the tractor after the first repair.**

(Doc. No. 56). The trial court thus ruled in favor of Savidge and denied Klaus's counterclaim. Klaus appeals the trial court's judgment, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The judgment of the trial court in favor of appellee and against appellant was against the manifest weight of the evidence.**

**Assignment of Error No. 2**
**The trial court erred in finding that there was a contract between appellee and appellant and rendering judgment on the same.**

**Assignment of Error No. 3**
**The appellee failed to meet his burden of proof as to the cost of repairs of appellant's tractor.**

{¶18} As all of Klaus's assignments of error deal with a discussion of evidence, we will address them together.

*First*, *Second*, *and Third Assignments of Error*

**{¶19}** In Klaus's first assignment of error, he argues that the trial court's judgment was against the manifest weight of the evidence. In Klaus's second and third assignments of error, he essentially argues that there was insufficient evidence to support some of the trial court's findings.

**{¶20}** Whether there is sufficient evidence to support a trial court's judgment is a question of law. Sufficiency is a test of adequacy. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11.

**{¶21}** The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight,' declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley* at ¶ 10, quoting *State v. Thompkins,* 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. In reviewing manifest weight of the evidence claims in civil cases, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179.

**{¶22}** In defining weight of the evidence review in civil cases, the Supreme Court of Ohio has held that,

> **"[w]eight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*' "**

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387, quoting *Black's Law Dictionary*.

**{¶23}** When determining a weight of the evidence argument, a court of appeals "must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. Furthermore, " '[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978); *Eastley* at ¶ 21.

### Sufficiency of the Evidence Regarding the Bill for Repair

**{¶24}** In Klaus's third assignment of error, he argues that the trial court erred by finding that Savidge sufficiently established the cost of repairs and that the repairs were reasonable and necessary.

-11-

{¶25} At trial, Savidge entered his bill for repairs into evidence and he also testified regarding the bill. The bill listed the work performed and hours worked. Savidge testified regarding the amount of hours listed on the bill, indicating that the hours listed that he worked on Klaus's tractor were on the back of the work order, with K by his name and B by the hours worked by Savidge's son. Savidge testified that altogether there were 63 work hours spent on the job and that he charged $75 per hour for work. Savidge testified that he had charged that rate for four years and that other establishments charged up to $100 an hour, so he felt his rate was fair. Savidge also testified that the only part he supplied was new antifreeze.

{¶26} Based on the testimony and exhibit presented we cannot find that there was insufficient evidence establishing the amount related to the repair work. The bill and the testimony support the trial court's decision. Thus Klaus's third assignment of error is overruled.

Sufficiency of the Evidence Regarding a Contract for Repair

{¶27} In Klaus's second assignment of error, he argues that the trial court erred by finding that there was a contract between Klaus and Savidge for repair of the vehicle. Specifically, Klaus argues that Savidge had to present more than just a bill to establish an agreement for payment; rather, he had to affirmatively establish an agreement between the parties.

{¶28} Contrary to Klaus's argument, Savidge testified that while he and Klaus were at Jim Johnson's residence, Klaus asked Savidge if he was going to cover the bill for new repairs or was going to pay half and Savidge stated that he would not because it was not his fault.

{¶29} Klaus testified that he had a different understanding of the matter and thought that Savidge was going to supply the labor to fix the tractor for free; however, Klaus did initially furnish a check to pay for the labor and stopped payment on it shortly thereafter.[9]

{¶30} Based on the evidence presented and the inferences that could be made therefrom, we cannot find that there was insufficient evidence presented for the trial court to find that there was an agreement for Klaus to pay for the repairs done by Savidge. Although the testimony conflicted on this issue, if Savidge's testimony was believed, there was sufficient evidence to support the trial court's decision. Therefore, Klaus's second assignment of error is overruled.

### Manifest Weight of the Evidence

{¶31} In his first assignment of error, Klaus argues that the trial court's judgment was against the manifest weight of the evidence. Specifically, he argues that the testimony of Joseph Selhorst, his "expert" witness, who answered a series of hypothetical questions based on the facts of this case, should have outweighed

---

[9] Klaus indicated a friend advised him to take this tact so that he could recover his tractor.

any claims of Savidge and his son that coolant was put back into the engine after the initial repair.

{¶32} In his argument, Klaus acknowledges the testimony of the Savidges—without agreeing with it—wherein the Savidges affirmatively testified that they put coolant back into the tractor, that they had a specific process for reminding themselves to do so, and that the process was used in this instance. Klaus also acknowledges that engine work had to be done on his tractor due to a pinhole, which could cause coolant to escape according to Mark Siegel. However, Klaus argues that the testimony of his expert opining that the likely problem with the tractor overheating was a failure by the Savidges to replace the coolant should outweigh the other testimony.

{¶33} In this case the trial court was presented with conflicting testimony and made a difficult decision given what was presented. We are compelled under a manifest weight review to give evidence that is susceptible to more than one interpretation the interpretation given by the trial court. Here, there was a legitimate path to the trial court's determination and we cannot find, when giving a presumption in favor of the factfinder, that the trial court clearly lost its way. This is particularly true given that Selhorst never worked on Klaus's tractor. Therefore, Klaus's first assignment of error is overruled.

*Conclusion*

**{¶34}** For the foregoing reasons Klaus's assignments of error are overruled and the judgment of the Auglaize County Municipal Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**